[Cite as *State v. Johnson*, 2019-Ohio-4668.]

COURT OF APPEALS OF OHIO

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

STATE OF OHIO,                           :

    Plaintiff-Appellee,          :

                                 No. 107528

    v.                           :

ADRIAN JOHNSON, JR.,                     :

    Defendant-Appellant.         :

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** VACATED AND REMANDED
**RELEASED AND JOURNALIZED:** November 14, 2019

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-18-625186-A

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting
Attorney, and Tasha Forchione and Daniel Van, Assistant
Prosecuting Attorneys, *for appellee.*

Edward F. Borkowski, Jr., *for appellant.*

PATRICIA ANN BLACKMON, J.:

{¶ 1} Adrian Johnson, Jr., ("Johnson") appeals from the trial court's imposition of a 15-year prison sentence, after Johnson pled guilty to aggravated robbery and weapons charges, and assigns the following errors for our review:

I.    The trial court erred by imposing consecutive sentences without making the necessary statutory findings.

II.   Appellant's sentence is contrary to law because the trial court failed to properly consider and weigh the relevant statutory principles and factors.

III.  The trial court's bias against appellant deprived him of a fair sentencing hearing in violation of his due process rights.

{¶ 2} Having reviewed the record and pertinent law, all three panel judges agree that Johnson's first assigned error arguing that the trial court failed to make the consecutive sentence findings should be sustained. Thus, all three judges agree to vacate the trial court's sentencing order only as it relates to consecutive sentences and remand this matter to the trial court for the limited purpose of considering whether consecutive sentences are appropriate under R.C. 2929.14(C) and, if so, entering the required findings on the record.

{¶ 3} All three panel judges also agree that Johnson's third assigned error regarding judicial bias is without merit. Thus, Johnson's third assigned error is overruled.

{¶ 4} With respect to Johnson's second assigned error, the three panel judges disagree. This lead opinion would sustain Johnson's second assigned error and find that the record does not support the maximum 15-year sentence that the court imposed. However, both the first separate opinion and the second separate opinion would overrule Johnson's second assigned error, but disagree on the law and reasoning as to why it should be overruled. Thus, a majority of the judges, as

noted in the first and second separate opinions, agree to overrule this assigned error. Therefore, Johnson's second assigned error is overruled.

## I. Facts and Procedural History

{¶ 5} On June 20, 2018, Johnson pled guilty to aggravated robbery in violation of R.C. 2911.01(A)(1), with a one-year firearm specification, which is a first-degree felony, and having a weapon while under disability in violation of R.C. 2923.13(A)(2), which is a third-degree felony. On July 17, 2018, the court sentenced Johnson to the maximum term of 11 years in prison for the aggravated robbery, one year in prison for the firearm specification, and three years in prison for the having a weapon while under disability conviction, all to run consecutively, for a total prison term of 15 years. It is from this sentence that Johnson appeals.

## II. Felony Sentencing

### A. Standard of Review

{¶ 6} R.C. 2953.08(G)(2) provides, in part, that when reviewing felony sentences, the appellate court's standard is not whether the sentencing court abused its discretion; rather, if this court "clearly and convincingly" finds that (1) "the record does not support the sentencing court's findings under" R.C. Chapter 2929 or (2) "the sentence is otherwise contrary to law," then we may conclude that the court erred in sentencing. *See also State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231.

{¶ 7} A sentence is not clearly and convincingly contrary to law "where the trial court considers the purposes and principles of sentencing under R.C. 2929.11

as well as the seriousness and recidivism factors listed in R.C. 2929.12, properly applies post-release control, and sentences a defendant within the permissible statutory range." *State v. A.H.*, 8th Dist. Cuyahoga No. 98622, 2013-Ohio-2525, ¶ 10.

{¶ 8} Pursuant to R.C. 2929.11(A), the three overriding purposes of felony sentencing are "to protect the public from future crime by the offender and others," "to punish the offender," and "to promote the effective rehabilitation of the offender using the minimum sanctions that the court determines accomplish those purposes * * *." Additionally, the sentence imposed shall be "commensurate with and not demeaning to the seriousness of the offender's conduct and its impact on the victim, and consistent with sentences imposed for similar crimes committed by similar offenders." R.C. 2929.11(B).

{¶ 9} Furthermore, in imposing a felony sentence, "the court shall consider the factors set forth in [R.C. 2929.12(B) and (C)] relating to the seriousness of the conduct [and] the factors provided in [R.C. 2929.12(D) and (E)] relating to the likelihood of the offender's recidivism * * *." R.C. 2929.12. However, this court has held that "[a]lthough the trial court must consider the principles and purposes of sentencing as well as the mitigating factors, the court is not required to use particular language or make specific findings on the record regarding its consideration of those factors." *State v. Carter*, 8th Dist. Cuyahoga No. 103279, 2016-Ohio-2725, ¶ 15.

**B. Consecutive Sentences**

{¶ 10} Additionally, "to impose consecutive terms of imprisonment, a trial court is required to make the findings mandated by R.C. 2929.14(C)(4) at the sentencing hearing and incorporate its findings into its sentencing entry * * *." *State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.3d 659, ¶ 37. Pursuant to R.C. 2929.14(C)(4), the court must find consecutive sentences are "necessary to protect the public from future crime or to punish the offender"; "not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public"; and at least one of the following three factors:

> (a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction * * *, or was under post-release control for a prior offense.

> (b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

> (c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

## III. The Sentencing Hearing

{¶ 11} At Johnson's sentencing hearing, the state indicated on the record the facts surrounding Johnson's convictions: Johnson and three other males robbed Johnson's relatives at gunpoint in their home. Johnson allegedly believed there was a gun at the house that he was "entitled to." According to the state, Johnson was on

probation at the time of the offense. As a recommendation to the court, the prosecutor stated on the record that "a prison sentence is appropriate in this case."

{¶ 12} One of the victims gave a statement at the hearing, parts of which follow:

> Adrian is family. Given the situation, he's been in and out of trouble.
>
> * * *
>
> When I found out there was a gun in my house, I had a whole talk with him. A gun is not allowed in my house like that. I told his mom come get him, he's being disrespectful to my home. He was not welcome back.
>
> So he went to the back, he got into a fight with my younger son. His friend, he came to the door, they pulled guns on me and my son. At that moment, that's like the worst thing I ever had. I had to step in front of my son because I didn't want him to be shot or take my kid out. That was the tough decision to make.
>
> But I grabbed my son, held him and I prayed that if anything happened, happen to me because I couldn't see burying one of my kids. Too many bad decisions have happened to children, I can't imagine it happening to me.
>
> Give him a couple years to get him to understand what could have happened to our family, how devastating this situation could have turned out. It's not like I haven't tried to help him. We all have. But at this time, I think he needs some time to think because it's not changed anything, the way he thinks.

{¶ 13} In mitigation, Johnson's attorney stated on the record that the victims in this case were Johnson's relatives and friends, Johnson was "very apologetic" about what happened, and he "was going to get what he believed to be his property, [but] that's not the way it should have been handled." Counsel stated that Johnson turned himself in to the police and apologized to the victims via text messages.

Counsel further stated that Johnson was "still a young kid. Certainly we don't want a large amount of prison time to cause him to suddenly get into that mindset of a revolving door. I think the minimum sentence you could give is 4 years. That's a sizeable amount of time, certainly would correlate with the wishes of the victim and the sons."

{¶ 14} Johnson's mother, Taiwarna Powell, also made a statement at the sentencing hearing and the following colloquy took place:

> MS. POWELL:     My son has made choices that hasn't been great for him, but he has got to a point where he turned around and was making better choices for himself. He does listen. You might not think that he hears you. He listens. Even in this situation, he feels like he needs to have some type of protection on him to walk around in Ohio and the thing is, my son wasn't the only person, it was more than just him that was involved.
>
> I do apologize about the fact that he went to the house which he shouldn't have. I talked to him myself about going over there. He felt he needed to be around other boys that he felt were making better choices. Adrian's intentions, he asked to borrow a gun, he was going to a different area that he was not used to and he wanted to feel safe for himself. It was his intentions.
>
> THE COURT:     Do you understand he's on probation for felonious assault?
>
> MS. POWELL:     I understand that. I understand he shouldn't have had a weapon. I understand that situation is the reason why he was in jail for felonious assault.
>
> I also — Adrian should have left it up to the police. They hadn't taken fingerprints or anything. They started on their way to school one day —
>
> THE COURT:     You want to retry that case, too?
>
> MS. POWELL:     They got into a fight.

THE COURT: Do you want to go over his juvenile record of assault, riot, criminal trespass? Ms. Powell, you have been given an opportunity to speak. You are not helping your son's case now. I see why he's been enabled to continue the criminal type behavior.

MS. POWELL: Could you tell me why?

THE COURT: Why what?

MS. POWELL: Why do you say that?

THE COURT: You are up here apologizing.

MS. POWELL: I apologize for the fact he shouldn't have went to that house. That's something he shouldn't have done. He shouldn't have had a gun, either, that wasn't a good choice.

THE COURT: Yes, it's a felonious assault case. There is a lot of shouldn't there.

MS. POWELL: I'm a domestic violence survivor. For six-and-a-half years I was in a relationship with someone, his dad was abusive. I have post traumatic stress just as my son did.

THE COURT: We are not here to talk about you.

MS. POWELL: You could not insult me as a mother, because I have been there as a mother for my son. I made sure my son had gone to school. I have been a parent.

THE COURT: Ms. Powell, we are not here to talk about you.

MS. POWELL: Other kids' mentor. Anything that I could have, for my son, because I care about my son.

THE COURT: Are you done?

MS. POWELL: No. I apologize to the mother and I apologize to the two victims.

THE COURT: We are not going to have courtroom conversation. You can sit down.

MS. POWELL: Thank you.

{¶ 15} The court then questioned the issue of Powell being a survivor of domestic violence, asking defense counsel, "what does that have to do with your client's violent criminal history?" Defense counsel replied that Johnson witnessed violence in the home as a child and was also abused, stating that "[i]t was a tough position they were in when he was growing up."

{¶ 16} The court asked Johnson if there was anything he would like to say. Johnson replied, "I don't got nothing to say." The court then sentenced Johnson as follows:

> THE COURT: Okay. Mr. Johnson, well, I do. It's my intention to remove you from society for as long as I can. You are a monster. You frankly scare me. Your behavior is inappropriate throughout this case. The way you stand and look speaks to your character.
>
> You were on probation [for felonious assault] when you committed this crime of aggravated robbery * * *. You received a gift of probation on an offense that carries with it a presumption of prison in the case number 605931.
>
> While on that case, you felt the need to go possess a firearm, use the firearm, use force to get that firearm, bring a couple other people in this situation. Then you identify a poor, innocent guy who gets locked up with you.[3] Thankfully he had a job — if you interrupt me it's not going to go well for you.
>
> JOHNSON: You do what you got to do.
>
> THE COURT: I will do what I have to do. Sit down or you are going with him. Carmen, one more word, take her into custody.
>
> Mr. Johnson, if I had any doubts as to whether you should ever walk free among organized society again, it was clearly a mistake. I'm going to give consecutive maximum time on this case.

---

[3] It is unclear from the record what the court is referring to.

**{¶ 17}** The court then stated the following regarding consecutive sentences:

I have considered the seriousness and recidivism factors and the purposes and principles of our sentencing statutes. This serious felony of the first degree offense that was committed with a firearm was committed while you were on community control [sanctions] in case number 605931.

Let's review your Juvenile Court history. 2014, adjudicated delinquent on riot and disorderly conduct in case number 14-109739. April of 2014, adjudicated delinquent on attempted assault in case number 14-109751. June of 2014, adjudicated delinquent on a breaking and entering and criminal trespass, case 14-111090.

July of 2014, adjudicated delinquent, sale to underage persons. August of 2014, adjudicated delinquent on an assault and resisting charge in 14-111094. 2014, August 9, adjudicated delinquent on an aggravated menacing case, 14-112199.

September of 2014, adjudicated delinquent on case number 14-111339, criminal trespass. December of 2014, adjudicated delinquent on another criminal trespass.

And then April of 2016, you picked up your felonious assault case. You were placed in the community based correctional facility program and while on that, you picked up a riot case, May of 20[1]7 in Bedford Municipal Court. You have a warrant out for your failure to appear. Now you are here on this case.

You will receive 11 years on the base count subsequent to the one-year firearm specification on Count 2. That will run consecutive to 36 months on Count 6. You will also serve that consecutive to the penalty Judge Fuerst will impose in case 605931.

You will be placed on a mandatory five-year period of post-release control following the completion of your prison term. You will be serving on this case 14 [sic] years consecutive to whatever you get on the 2 to 8 year sentence hanging over your head in Judge Fuerst's room.

I would suggest you comport yourself a little better in front of Judge Fuerst, and don't ask your mom to come to sentencing. You are ordered remanded. Good luck.

{¶ 18} In the case at hand, the court found that Johnson was on probation when he committed the offenses in question. The court also stated on the record that it "considered the seriousness and recidivism factors and the purposes and principles of our sentencing statutes." The court categorized Johnson's actions as "serious" and noted his history of being adjudicated delinquent as a juvenile, as well as having one previous felony conviction as an adult, for which he was sentenced to community control sanctions.

{¶ 19} The court stated at Johnson's sentencing hearing that it received and reviewed Johnson's presentence investigation report. This report details Johnson's offense as follows: On November 22, 2017, at 2:00 p.m., Johnson and two other males arrived at Johnson's relatives' house to retrieve "a borrowed handgun." After an argument, the victims would not let Johnson inside the house. He and the other males "rushed inside the residence and drew handguns." While holding the victims at gunpoint, the males took "$400 cash and a hand gun" from the victims. Johnson allegedly struck one of the victims, and the three males fled the scene.

{¶ 20} The victims called 911, and one of the males was apprehended while fleeing. This suspect, along with the victims, identified Johnson as the one who planned the robbery. Ultimately, Johnson admitted to the police that he was present during the incident.

{¶ 21} The presentence investigation report lists Johnson's age at the time of the offense as 20 and states that he completed the 11th grade before being "expelled from school for fighting." Johnson has difficulty reading and writing, he

has never served time in prison prior to this case, and he has no history of mental or physical health problems. Johnson denied having a substance abuse problem, although he self-reported that he has been using alcohol since he was 13 and marijuana since he was 14. Johnson lives with his mother, has no job, and pays no rent. According to the report, Johnson's recidivism risk level is "moderate."

## IV. Analysis

### A. Consecutive Sentences

{¶ 22} In Johnson's first assigned error, he argues that the court failed to make the necessary statutory findings before imposing consecutive sentences. Upon review, we find that the court failed to make the findings, both at the sentencing hearing and in the sentencing journal entry, required under R.C. 2929.14(C) to impose consecutive sentences. *See State v. Jones*, 93 Ohio St.3d 391, 399, 754 N.E.2d 1252 (2001) ("when a trial court imposes consecutive sentences, it must state on the record its reasons for doing so"). For example, there is no finding by the court that Johnson's sentence is necessary to protect the public, punish the offender, or "not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public" pursuant to R.C. 2929.14(C)(4). *See* R.C. 2953.08(G)(2). *See also State v. Hairston*, 10th Dist. Franklin Nos. 17AP-416, 17AP-417, 2017-Ohio-8719, ¶ 13 (remanding case for resentencing because "the trial court did not make the complete disproportionality finding as required by R.C. 2929.14(C)(4)").

{¶ 23} Accordingly, Johnson's first assigned error is sustained. Sentence vacated, and case remanded for the limited purpose of resentencing in accordance with R.C. 2929.14(C)(4). *See State v. Nia*, 8th Dist. Cuyahoga No. 99387, 2014-Ohio-2527 ("the trial court is limited on remand to only the * * * required findings pursuant to R.C. 2929.14(C)(4) to justify consecutive sentences").

## V. Court Bias and a Fair Sentencing Hearing

{¶ 24} In Johnson's third assigned error, he argues that the trial court was biased against him and deprived him of a fair sentencing hearing.

> It is well settled that a criminal trial before a biased judge is fundamentally unfair and denies a defendant due process of the law. * * * We have described judicial bias as "a hostile feeling or spirit of ill will * * * toward one of the litigants or his attorney, with the formation of a fixed anticipatory judgment on the part of the judge, as contradistinguished from an open state of mind which will be governed by the law and the facts."

*State v. LaMar*, 95 Ohio St.3d 181, 2002-Ohio-2128, 767 N.E.2d 166, ¶ 34, quoting *State ex rel. Pratt v. Weygandt*, 164 Ohio St. 463, 132 N.E.2d 191 (1956), paragraph four of the syllabus.

{¶ 25} Generally, a challenge to a trial judge's objectivity must comport with the procedures outlined in R.C. 2701.03, section (A) of which states that "any party to the proceeding or the party's counsel may file an affidavit of disqualification with the clerk of the supreme court * * *." Therefore, "[w]e have no authority to determine a claim that a trial judge is biased or prejudiced against a defendant and no authority to void a trial court's judgment based on a claim that the trial judge is

biased or prejudiced." *State v. Williamson*, 8th Dist. Cuyahoga No. 104294, 2016-Ohio-7053, ¶ 27.

{¶ 26} However, Ohio courts have held that a judicial bias claim may be interpreted "as an argument that [the defendant's] sentence is contrary to law based on a due process violation." *See, e.g., State v. Frazier*, 8th Dist. Cuyahoga No. 104264, 2017-Ohio-8307, ¶ 15. Furthermore, "[t]he law presumes that a judge is unbiased and unprejudiced in the matters over which he or she presides, and the appearance of bias or prejudice must be compelling in order to overcome the presumption." *State v. Filous*, 8th Dist. Cuyahoga No. 104287, 2016-Ohio-8312, ¶ 14.

{¶ 27} "If the trial judge forms an opinion based on facts introduced or events occurring during the course of the current or prior proceedings, this does not rise to the level of judicial bias * * *." *State v. Hough*, 8th Dist. Cuyahoga Nos. 98480 and 98482, 2013-Ohio-1543, ¶ 11. However, an exception to this rule occurs if the judge's opinions "display a deep-seated favoritism or antagonism that would make fair judgment impossible." *Liteky v. United States*, 510 U.S. 540, 555, 114 S.Ct. 1147, 127 L.Ed.2d 474 (1994).

{¶ 28} It appears from the sentencing hearing transcript in the case at hand that the court did not like the way Johnson presented himself throughout these proceedings, and it did not like Johnson's mother's remarks. The court referred to Johnson as a "monster." The court found the manner in which Johnson was standing to be "inappropriate." The court stated, "[I]f I had any doubts as to whether

you should ever walk free among organized society again, it was clearly a mistake." The court told Johnson that if he interrupted, "[I]t's not going to go well for you."

{¶ 29} Additionally, the court was brusque with Johnson's mother, telling her that she was "not helping your son's case now. I see why he's been enabled to continue the criminal type behavior." The court asked Johnson's mother if she wanted to retry his juvenile cases and told Johnson not to bring his mother to the upcoming sentencing hearing for the violation of his community control sanctions.

{¶ 30} While we cannot condone the court's extraneous comments, they do not rise to the level of a due process violation nor do they render Johnson's sentence contrary to law. Accordingly, Johnson's third assigned error is overruled.

## VI. Felony Sentencing Under R.C. 2929.11 and 2929.12

{¶ 31} In his second assigned error, Johnson argues that his "sentence is contrary to law because the trial court failed to properly consider and weigh the relevant statutory principles and factors."

{¶ 32} This lead opinion and the second separate opinion agree that a trial court may review the record to determine if it clearly and convincingly supports the given sentence under R.C. Chapter 2929. This is the current law in Ohio regarding felony sentencing. *See Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231, at ¶ 23 ("an appellate court may vacate or modify any sentence that is not clearly and convincingly contrary to law only if the appellate court finds by clear and convincing evidence that the record does not support the sentence"); *State v. Jones*, 2018-Ohio-498, 105 N.E.3d 702 (8th Dist.), ¶ 20, (concluding in an en banc decision

that appellate review of felony sentences "includes the considerations under R.C. 2929.11 and the findings under 2929.12").

{¶ 33} We are aware that the trial court does not have to make findings on the record regarding the R.C. 2929.11 and 2929.12 sentencing factors. We are also aware that appellate courts may not substitute their judgment for the trial court's judgment nor may they independently weigh the sentencing factors. That is not to say, however, that appellate courts have no authority to review an individual felony sentence based on whether it is excessive given the evidence in the record.[4] As the Ohio Supreme Court noted in *Marcum*,

> it is fully consistent for appellate courts to review those sentences that are imposed solely after consideration of the factors in R.C. 2929.11 and 2929.12 under a standard that is equally deferential to the sentencing court. That is, an appellate court may vacate or modify any sentence that is not clearly and convincingly contrary to law only if the appellate court finds by clear and convincing evidence that the record does not support the sentence.

*Marcum* at ¶ 23.

{¶ 34} Meaningful appellate review allows this court to consider the parties' arguments "through the lens of the law." *Jones* at ¶ 19. Felony sentencing law in Ohio grants trial courts substantial, but not unfettered, discretion to impose a sentence within the statutory range. In like manner, the law grants appellate courts

---

[4] A similar proposition of law is pending review in *State v. Gwynne*, Ohio Supreme Court No. 2017-1506. The proposition of law is: "Does R.C. 2953.08(G)(2) allow a Court of Appeals to review the trial court's findings made pursuant to R.C. 2929.11 and 2929.12." This court's en banc decision in *Jones* has been accepted for review by the Ohio Supreme Court and is being held for the decision in *Gwynne*. *See 9/12/2018 Case Announcements*, 153 Ohio St.3d 1474, 2018-Ohio-3637, 106 N.E.3d 1260.

the authority to review felony sentences with substantial, but not unfettered, deference to the trial court's judgment.

{¶ 35} The first separate opinion reaches a different conclusion regarding the law and would find that "this court has no basis to reverse a prison sentence imposed within the applicable statutory range for the felony offense unless there is objective information in the record that the trial court (1) failed to consider R.C. 2929.11 and 2929.12 in formulating the sentence, or (2) relied on demonstrably false or inaccurate information when making said considerations."

{¶ 36} Respectfully, the first separate opinion's reasoning loses sight of the purposes and principles of Ohio's felony sentencing statutes. Under this view, a court could properly impose the maximum sentence for every felony on its docket if it states on the record that it considered the proper sentencing statutes. The unique facts of each case would be meaningless, the seriousness of each offense would be diluted, and the difference between depraved criminals and offenders who may be rehabilitated would be eradicated.

{¶ 37} Although this lead opinion and the second separate opinion agree on the law, the panel members disagree on the disposition of the second assigned error after applying the facts of this case to the law.

{¶ 38} It is my opinion that in the case at hand the record does not clearly and convincingly support the court's decision to sentence Johnson to maximum consecutive prison terms. Although the court stated that it "considered" the proper

factors, Johnson's sentence is objectively unreasonable and unsupported by the evidence in the record.

{¶ 39} The record does not support that the maximum consecutive sentence was needed to protect the public from Johnson or to punish Johnson for the crimes committed. Furthermore, the record does not support the notion that courts should "promote the effective rehabilitation of the offender using the minimum sanctions that the court determines accomplish" the purposes and principles of felony sentencing. Particularly in light of the victim's statement to the court, this sentence is not commensurate to the seriousness of Johnson's conduct nor its impact on the victims.

{¶ 40} Additionally, the only evidence in the record concerning Johnson's recidivism risk is in his presentence investigation report, which lists his level as "moderate." Furthermore, there is no evidence to support that Johnson's sentence was "consistent with sentences imposed for similar crimes committed by similar offenders," pursuant to R.C. 2929.11(B).

{¶ 41} Accordingly, I would sustain Johnson's second assigned error. However, the first and second separate opinions agree to overrule Johnson's second assigned error, albeit for different reasons.

{¶ 42} In summary, Johnson's first assigned error is sustained, and his second and third assigned errors are overruled. We vacate the trial court's sentencing order only as it relates to consecutive sentences and remand this matter to the trial court for the limited purpose of considering whether consecutive

sentences are appropriate under R.C. 2929.14(C) and, if so, entering the required findings on the record

{¶ 43} Sentence vacated. Case remanded for limited resentencing.

It is ordered that appellant recover from appellee costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
PATRICIA ANN BLACKMON, JUDGE

EILEEN T. GALLAGHER, P.J., CONCURS IN PART
AND DISSENTS IN PART WITH SEPARATE
OPINION;
MARY J. BOYLE, J., CONCURS IN PART AND
DISSENTS IN PART WITH SEPARATE OPINION

EILEEN T. GALLAGHER, P.J., CONCURRING IN PART AND DISSENTING IN PART:

{¶ 44} I concur with the majority's resolution of the first assignment of error. After careful review of the sentencing transcript, I agree with Johnson that the trial court failed to make the necessary findings for imposing consecutive sentences under R.C. 2929.14(C)(4). In addition, I concur with the majority's resolution of the third assignment of error, because Johnson failed to set forth a meritorious judicial bias claim. However, I respectfully disagree with the lead opinion's position that the

record does not support the sentence. I further disagree with the lead and second separate opinion's subjective approach to appellate review of felony sentences.

{¶ 45} To begin, I note that Johnson's second assignment of error challenges the adequacy of the trial court's sentencing considerations under R.C. 2929.11 and 2929.12. Johnson argues the trial court did not "properly" consider the relevant recidivism factors under R.C. 2929.12 and, therefore, imposed an aggregate prison term that "is contrary to law." While Johnson references the aggregate prison term he received, appellate review of a trial court's consideration of the applicable sentencing criteria under R.C. 2929.11 and 2929.12 does not implicate the consecutive nature of the sentences. Rather, our review of the court's compliance with R.C 2929.11 and 2929.12 concerns the individual sentence imposed on each felony offense. Thus, the majority's determination that the record does not support the relevant R.C. 2929.14(C)(4) consecutive sentence findings concerns an issue that is distinct from whether the record supports the prison term imposed on each offense.

{¶ 46} A sentence is contrary to law if it falls outside the statutory range for the particular degree of offense or if the trial court fails to consider the purposes and principles of felony sentencing set forth in R.C. 2929.11 and the sentencing factors set forth in R.C. 2929.12. *State v. Pawlak*, 8th Dist. Cuyahoga No. 103444, 2016-Ohio-5926, ¶ 58. Although the trial court must consider the purposes and principles of felony sentencing set forth in R.C. 2929.11 and the sentencing factors listed in R.C. 2929.12, the court is not required to make findings or give reasons for imposing

more than the minimum sentence. *State v. Pavlina*, 8th Dist. Cuyahoga No. 99207, 2013-Ohio-3620, ¶ 15, citing *State v. Foster*, 109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470. A trial court's general statement that it considered the required statutory factors, without more, is sufficient to fulfill its obligations under the sentencing statutes. *Id.*, citing *State v. Wright*, 8th Dist. Cuyahoga No. 95096, 2011-Ohio-733, ¶ 4. And because courts have full discretion to impose sentences within the statutory range, a sentence imposed within the statutory range is "presumptively valid" if the court considered the applicable sentencing factors. *Id.*, citing *State v. Collier*, 8th Dist. Cuyahoga No. 95572, 2011-Ohio-2791, ¶ 15.

{¶ 47} As stated by the lead opinion, when a sentence is imposed solely after consideration of the factors in R.C. 2929.11 and 2929.12, "[a]n appellate court may vacate or modify any sentence that is not clearly and convincingly contrary to law only if the appellate court finds by clear and convincing evidence that the record does not support the sentence." *Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231, at ¶ 23.

> Clear and convincing evidence is that measure or degree of proof which is more than a mere "preponderance of the evidence," but not to the extent of such certainty as is required "beyond a reasonable doubt" in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established.

*Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph three of the syllabus.

{¶ 48} Significantly, an "'appellate court's standard for review is not whether the sentencing court abused its discretion.' As a practical consideration, this means

that appellate courts are prohibited from substituting their judgment for that of the trial judge." *State v. Venes*, 2013-Ohio-1891, 992 N.E.2d 453, ¶ 20 (8th Dist.). "This is an extremely deferential standard of review." *Id.* at ¶ 21.

{¶ 49} In this case, the record reflects that in formulating Johnson's sentence, the trial court stated that it "considered the seriousness and recidivism factors and the purposes and principles of our sentencing statutes." Despite this unambiguous statement, however, the lead opinion concludes that "Johnson's sentence is objectively unreasonable and unsupported by the evidence in the record." Without specifying how the record is objectively inadequate, the lead opinion finds that the record does not support the court's considerations under R.C. 2929.11 and 2929.12. After careful consideration, I am unable to join this assessment of the record.

{¶ 50} In my view, the lead opinion's conclusion impermissibly discounts the discretion afforded to sentencing courts and imposes a fact-finding obligation on the trial court when no such requirement is mandated by the Ohio Revised Code. Contrary to the implications of the lead opinion's holding, the trial court was not required to verbally analyze, weigh, or make findings on the record regarding the relevant mitigating factors. By failing to accept the trial court's statement that it made the necessary statutory considerations, the lead opinion is merely substituting its judgment for that of the trial court, which appellate courts are not permitted to do. *State v. McCoy*, 8th Dist. Cuyahoga No. 107029, 2019-Ohio-868, ¶ 19 ("We cannot substitute our judgment for that of the sentencing judge."). Moreover, by

contemplating the seriousness of Johnson's conduct in light of the relevant mitigating factors, I believe the lead opinion is independently weighing the sentencing factors, which appellate courts are also not permitted to do. *State v. Ongert*, 8th Dist. Cuyahoga No. 103208, 2016-Ohio-1543, ¶ 14; *State v. Price*, 8th Dist. Cuyahoga No. 104341, 2017-Ohio-533, ¶ 20; *State v. Bailey*, 8th Dist. Cuyahoga No. 107216, 2019-Ohio-1242, ¶ 15; *State v. Rahab*, 150 Ohio St.3d 152, 2017-Ohio-1401, 80 N.E.3d 431, ¶ 10; and *State v. Anderson*, 8th Dist. Cuyahoga No. 103490, 2016-Ohio-3323, ¶ 9. While the lead opinion uses the phrase "objectively unreasonable," the lead opinion's analysis demonstrates that it finds the sentences imposed on each offense to be excessive under the facts and circumstances of this case. Respectfully, this is a subjective conclusion that usurps the discretion of the sentencing court. Because appellate courts are not sentencing courts, I believe this decision goes against the clear standard of review set forth in R.C. 2952.08(G) and is contrary to well-established precedent of this court.

{¶ 51} Upon review, I believe the record demonstrates that the trial court imposed individual prison terms within the applicable statutory ranges, and carefully considered the relevant factors set forth under R.C. 2929.11 and 2929.12. The trial court stated that it considered the relevant recidivism factors and extensively discussed the relevant seriousness factors, including Johnson's use of a firearm, the breadth of his juvenile record, and the harm caused to the victims. Regarding the relevant mitigating factors, I would also note that while several individuals stated during the sentencing hearing that Johnson had apologized and

demonstrated remorse, the record reflects that when given the opportunity to make such statements himself during the sentencing hearing, Johnson stated, "I don't got nothing to say." Under these circumstances, I am unable to conclude that Johnson's individual sentences were clearly and convincingly unsupported by the record.

{¶ 52} Accordingly, I would overrule the second assignment of error, but would vacate Johnson's consecutive sentences and remand the case for resentencing for the trial court to again consider whether consecutive sentences are appropriate under R.C. 2929.14(C)(4) and, if so, to make the required findings on the record and incorporate those findings in the sentencing journal entry in accordance with *Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.3d 659, at syllabus. A de novo resentencing hearing is not appropriate.

{¶ 53} In many regards, this case perfectly illustrates the appellate dilemma created by the Ohio Supreme Court's apparent extension of the clear and convincing standard set forth under R.C. 2953.08 to appellate review of a trial court's compliance with R.C. 2929.11 and 2929.12. *Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231, at ¶ 23.

{¶ 54} In this court's en banc decision in *State v. Jones*, 2018-Ohio-498, 105 N.E.3d 702 (8th Dist.),[5] I agreed with the majority's determination that:

> under *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231, the Ohio Supreme Court read R.C. 2929.11 and 2929.12

---

[5] *Jones* has been accepted by the Ohio Supreme Court for review and held for review of *State v. Gwynne*, 5th Dist. Delaware No. 16 CAA 12 0056, 2017-Ohio-7570. *9/12/2019 Case Announcements*, 153 Ohio St.3d 1474, 2018-Ohio-3637, 106 N.E.3d 1260. The issue in these two cases is whether R.C. 2953.08(G)(2) allows a court of appeals to review the trial court's findings made pursuant to R.C. 2929.11 and 2929.12.

into R.C. 2953.08(G)(2)(a), allowing an appellate court to increase, reduce, or otherwise modify a sentence or vacate the sentence and remand the matter to the sentencing court for re-sentencing if the record does not support the sentencing court's findings under R.C. 2929.13(B) or (D), R.C. 2929.14(B)(2)(e) or (C), R.C. 2929.20(I), as well as R.C. 2929.11 and 2929.12.

*Id.* at ¶ 5, 21. However, while I joined the majority based upon the clear language used in *Marcum* at ¶ 23, I found portions of the dissent to be persuasive. In relevant part, I agree that the more pressing issue is:

whether *Marcum* altered the appellate standard of review under R.C. 2953.08(G) to permit a more expansive appellate review process that permits an appellate court to independently consider the sentencing factors and independently determine the most effective way to comply with R.C. 2929.11.

*Jones* at ¶ 44 (S. Gallagher, J., dissenting). At this time, it is my belief that *Marcum* did not intend to disrupt the well-settled position of Ohio appellate courts that reviewing courts are not entitled to substitute their judgment for that of the trial court, nor are they entitled to independently weigh the sentencing factors set forth under R.C. 2929.11 and 2929.12. It is therefore my position that, following *Marcum*, this court has no basis to reverse a prison sentence imposed within the applicable statutory range for the felony offense unless there is objective information in the record that the trial court (1) failed to consider R.C. 2929.11 and 2929.12 in formulating the sentence, or (2) relied on demonstrably false or inaccurate information when making said considerations. *See State v. Whitaker*, 8th Dist. Cuyahoga Nos. 107584 and 107967, 2019-Ohio-2823, ¶ 18 (finding by clear and convincing evidence that the record did not support the imposed prison

term where the record indicated the trial court relied exclusively on the defendant's "prior convictions" in its consideration of the sentencing factors, but the record objectively showed the defendant had no prior criminal convictions at the time of the offenses or at the time of sentencing).

{¶ 55} Nevertheless, without further guidance on this issue from the Ohio Supreme Court, it is not surprising that appellate courts, including the lead opinion and second separate opinion in this case, have adopted a more comprehensive interpretation of *Marcum* in an effort to reverse felony sentences deemed by the reviewing court to be excessive.

{¶ 56} Following the release of *Marcum*, criminal appellants have routinely argued on appeal that the prison term imposed by the trial court is not supported by the record or is otherwise contrary to law. In resolving this issue, many appellate courts have begun to independently scour the record in search of information that clearly and convincingly does or does not support the trial court's presumed R.C. 2929.11 and 2929.12 considerations. Unlike the objective application of the clearly and convincing standard to the fact-finding statutes specifically referenced in R.C. 2953.08(G)(2)(a), the application of this standard of review to R.C. 2929.11 and 2929.12 is more ambiguous and empowers more subjective appellate review of individual sentences. This is because trial courts are not required to make findings or state the specific statutory factors in R.C. 2929.11 and 2929.12 on which the court relied. Thus, the record is often silent on this issue and appellate courts are left to review felony sentences without a complete understanding of how the trial court

balanced the competing sentencing factors. In my view, it necessarily follows that in determining whether "by clear and convincing evidence the record does not support the sentence," appellate courts have begun to independently review the entire record, while simultaneously assessing the presumed weight given, or as in this case — not given, by the trial court to certain felony sentencing factors. As previously discussed, however, this subjective and quasi-de novo approach has been expressly forbidden by clear precedent of this court. Yet, the lead opinion and second separate opinion apply an undoubtedly subjective approach in this case anyway.

{¶ 57} Inevitably, the contradictions involved in *Marcum's* expansion of R.C. 2953.08(G)(2)(a) will lead to inconsistent appellate decisions and, most importantly, the inappropriate substitution of a trial court's sentencing discretion. Absent clear statutory instruction, or further judicial guidance, appellate courts will continue to apply their best judgment when reviewing sentences imposed upon consideration of R.C. 2929.11 and 2929.12. Unfortunately, I believe paragraph 23 of *Marcum* has merely created a standard of review that seemingly imitates the famous "I know it when I see it" standard expressed by United States Supreme Court Justice Potter Stewart. *Jacobellis v. Ohio*, 378 U.S. 184, 197, 84 S.Ct. 1676, 12 L.Ed.2d 793 (1964) (Stewart, J., concurring). I do not believe this is the standard contemplated by R.C. 2953.08(G).

{¶ 58} My comments are not intended to suggest that I always agree with the sentencing discretion exercised by trial courts in this county, or that I necessarily

agree with the length of the prison terms imposed in this case. In some instances, this court is presented with individual or aggregate sentences that could reasonably be characterized as excessive. As stated, however, Ohio courts have routinely characterized appellate review of felony sentencing is "extremely deferential" to the sentencing court. *See State v. Tidmore*, 8th Dist. Cuyahoga No. 107369, 2019-Ohio-1529, ¶ 22; *State v. Boyd*, 2d Dist. Clark No. 2018-CA-68, 2019-Ohio-1902, ¶ 26; *State v. Robinson*, 4th Dist. Meigs Nos. 18CA10 and 18CA17, 2019-Ohio-2155, ¶ 31; *State v. Payton*, 5th Dist. Muskingum Nos. CT2017-0095 and CT2017-0096, 2018-Ohio-3864, ¶ 22; *State v. Thompson*, 9th Dist. Wayne No. 15AP0016, 2016-Ohio-4689, ¶ 45; *State v. McKnight*, 10th Dist. Franklin Nos. 17AP-778 and 17AP-780, 2018-Ohio-1916, ¶ 15; *State v. Hurd*, 11th Dist. Geauga No. 2018-G-0157, 2019-Ohio-327, ¶ 18; *State v. Blevings*, 12th Dist. Warren No. CA2017-12-175, 2018-Ohio-4382, ¶ 16. Thus, the purpose of our review is to ensure that the trial court has complied with all applicable sentencing statutes, not to review the discretion utilized by the court during its implementation of these statutes. The appellate division is not a sentencing court.

{¶ 59} It is my hope, however, that moving forward the trial court will carefully consider and give equal weight to the new sentencing purpose of promoting "effective rehabilitation." It is evident that S.B. 66 was formulated in an effort to reduce mass incarceration by rehabilitating individuals, expanding prison alternative programs, and reducing aggregate prison terms. The amendment to R.C.

2929.11 is not inconsequential and sentences should start reflecting the legislature's comprehensive goals.

MARY J. BOYLE, J., CONCURRING IN PART AND DISSENTING IN PART:

{¶ 60} Respectfully, I am compelled to write separately from both the lead and concurring in part and dissenting in part opinions ("separate opinion"). I agree with the lead and separate opinions on Johnson's first and third assignments of error. That is, I agree that the trial court failed to make the consecutive sentence findings on the record at the sentencing hearing and failed to place those findings in the judgment entry. I also agree that there is no evidence of judicial bias in this case. But with respect to Johnson's second assignment of error involving the principles and purposes of felony sentencing in R.C. 2929.11 and the seriousness and recidivism factors in R.C. 2929.12, I disagree with the lead opinion that the record does not support the sentence; it is my view that it does. And although the separate opinion would also overrule Johnson's second assignment of error, I cannot agree with the law or reasoning set forth in the separate opinion, and thus, I concur in judgment only with the separate opinion.[6]

## I.    R.C. 2929.11 and 2929.12.

{¶ 61}  In his second assignment of error, Johnson argues that the trial court failed to properly consider R.C. 2929.11 and 2929.12 when imposing his

[6] This writer's separate opinion will be referred to as the "third opinion."

sentence.  He argues that his 15-year sentence "went well beyond what was necessary to protect the public and to punish and rehabilitate him."

{¶ 62} I agree with the lead opinion that an appellate court may review the record to determine if it supports the trial court's sentence under R.C. 2929.11 and 2929.12.  I simply disagree with the lead opinion's conclusion on this issue, however, because it is my view that the record in this case clearly and convincingly supports the sentence.  While the separate opinion would also overrule Johnson's second assignment of error, I cannot agree with the law or reasoning set forth in the separate opinion.

## A. En Banc Proceedings

{¶ 63} In *Jones*, 8th Dist. Cuyahoga Nos. 103290 and 103302, 2018-Ohio-498, 105 N.E.3d 702, a majority of this court held en banc that we may review a sentence that is within the statutory range for the offenses where the trial court stated it considered R.C. 2929.11 and 2929.12.  The en banc *Jones* decision further explained our obligation under R.C. 2953.08(G)(2), stating:

> [W]e are required to "review the record, including the findings underlying the sentence or modification given by the sentencing court." And for the reasons discussed, our review includes the considerations under R.C 2929.11 and the findings under 2929.12. Then, if after reviewing those findings, we find that the sentence is contrary to law or not supported by the record, we may take action.

*Jones* at ¶ 19.

{¶ 64} I recognize that the Ohio Supreme Court has accepted *Jones* for discretionary appeal and held it for its decision in *Gwynne*, 5th Dist. Delaware No.

16CAA120056, 2017-Ohio-7570, on the question of whether an appellate court may review a trial court's findings under R.C. 2929.11 and 2929.12. But until the Supreme Court overrules *Jones*, it is the settled law in this district that we are required to follow. App.R. 26(A)(2)(b) ("The decision of the en banc court shall become the decision of the court."); *see also In re J.J.*, 111 Ohio St.3d 205, 2006-Ohio-5484, 855 N.E.2d 851, ¶ 18 ("The Eighth District's conflicting rulings on the same legal issue create confusion for lawyers and litigants and do not promote public confidence in the judiciary. Appellate courts are duty-bound to resolve conflicts within the district through en banc proceedings."); *McFadden v. Cleveland State Univ.*, 120 Ohio St.3d 54, 2008-Ohio-4914, 896 N.E.2d 672, ¶ 15 ("The issuance of conflicting decisions from a court of appeals does not serve the fundamental purpose for the operation of courts - the resolution of legal disputes.").

{¶ 65} The Ohio Supreme Court further explained in *McFadden* at ¶ 16:

> "'The principal utility of determinations by the courts of appeals in banc is to enable the court to maintain its integrity as an institution by making it possible for a majority of its judges always to control and thereby to secure uniformity and continuity in its decisions, while enabling the court at the same time to follow the efficient and time-saving procedure of having panels of three judges hear and decide the vast majority of cases as to which no division exists within the court.'" *United States v. American-Foreign Steamship Corp.* (1960), 363 U.S. 685, 689-690, 80 S.Ct. 1336, 4 L.Ed.2d 1491, quoting *Maris, Hearing and Rehearing Cases en banc* (1954), 14 F.R.D. 91, 96. This form of review promotes finality and predictability of the law within appellate districts, which is especially important considering that the court of appeals is the final stop in the legal process for many cases. *See Textile Mills* [*Sec. v. Commr. of Internal Revenue*], 314 U.S. [326], 335, 62 S.Ct. 272, 86 L.Ed. 249 [1941].

{¶ 66} Despite these well-settled en banc principles, the separate opinion cites to *Ongert*, 8th Dist. Cuyahoga No. 103208, 2016-Ohio-1543 (and others that followed it), in support of its statement that the lead opinion was not permitted to "contemplate[] the seriousness of Johnson's conduct in light of the mitigating factors" because appellate courts are not permitted to independently weigh sentencing factors under R.C. 2929.11 and 2929.12. *Ongert*, however, was the certified intradistrict conflict case in *Jones* and was therefore overruled by *Jones*. *See Jones* at ¶ 1.

### B. Sentencing Review Under R.C. 2953.08(G)(2)

{¶ 67} Regarding our review of felony sentences, the separate opinion states:

> Significantly, an "'appellate court's standard for review is not whether the sentencing court abused its discretion.' As a practical consideration, this means that appellate courts are prohibited from substituting their judgment for that of the trial judge." *State v. Venes*, 2013-Ohio-1891, 992 N.E.2d 453, ¶ 20 (8th Dist.). "This is an extremely deferential standard of review." *Id.* at ¶ 21.

{¶ 68} This writer has previously pointed out the deeply troubling contradictions in this paragraph and in *Venes*. *See State v. Roberts*, 8th Dist. Cuyahoga No. 104474, 2017-Ohio-9014, ¶ 34 - 41 (Boyle, J., dissenting). Indeed, one would be hard pressed to find a more established legal principle in the state of Ohio (or country for that matter) than that of the abuse-of-discretion review — that it is an extremely deferential standard of review. When appellate courts are reviewing for abuse of discretion, we are prohibited from substituting our judgment

for that of the trial judge.  This writer does not need to cite cases for this well-established black letter law.

{¶ 69} R.C. 2953.08(G)(2) was enacted as part of Am.Sub.S.B. No. 2 in 1996. The General Assembly amended R.C. 2953.08(G)(2) four years after it originally enacted it *to expressly add* that our standard of review for felony sentences "is not whether the sentencing court abused its discretion."  *See* Am.Sub.H.B. No. 331, effective Oct. 10, 2000.  When it did so, it unequivocally intended to make clear to appellate judges across the state that our review is *not extremely deferential*. Otherwise, the legislature would have mandated just the opposite — that our standard for review is "whether the sentencing court abused its discretion."

{¶ 70} Before the legislature made wide-sweeping changes to Ohio's felony sentencing laws in S.B. 2, "sentencing decisions were generally subjected to an abuse[-]of[-]discretion standard, and appellate courts rarely disturbed a sentence imposed within statutory limits." *State v. Shryock*, 1st Dist. Hamilton No. C-961111, 1997 Ohio App. LEXIS 3494, 5-6 (Aug. 1, 1997).    A hallmark of S.B. 2, however, was "meaningful appellate review" of felony sentencing as enacted in R.C. 2953.08(G)(2). *State v. Comer*, 99 Ohio St.3d 463, 2003-Ohio-4165, 793 N.E.2d 473, ¶ 10.  The Ohio Supreme Court explained that "meaningful review" meant that a reviewing court "hearing an appeal of a felony sentence may modify or vacate the sentence and remand the matter to the trial court for resentencing if the court clearly and convincingly finds that the record does not support the sentence or that the sentence is otherwise contrary to law." *Id.*, citing R.C. 2953.08; *Griffin & Katz, Ohio*

*Felony Sentencing Law*, Sections 9.19-9.20, at 791-796 (2002). As one commentator explained it, "[T]he most significant aspect of the new sentencing law was that trial courts no longer had unfettered discretion when sentencing offenders." Painter, A*ppellate Review Under the New Felony Sentencing Guidelines: Where Do We Stand?*, 47 Cleve.St.L.Rev. 533, 537-538 (1999) ("Painter").

{¶ 71} Thus, I cannot agree with the separate opinion, referring to R.C. 2929.11 and 2929.12, that "[a] trial court's general statement that it considered the required statutory factors, without more, is sufficient to fulfill its obligations under the sentencing statutes." A trial court's obligation under these statutes is more than to just mechanically say that it considered them. Although a trial court does not have to make findings under R.C. 2929.11 and 2929.12, the trial court must actually consider these statutes and apply them to the facts of each case.

{¶ 72} Further, I disagree with the separate opinion that *Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.2d 1231, altered or expanded the appellate standard of review under R.C. 2953.08(G)(2) when it said at ¶ 23:

> We note that some sentences do not require the findings that R.C. 2953.08(G) specifically addresses. Nevertheless, it is fully consistent for appellate courts to review those sentences that are imposed solely after consideration of the factors in R.C. 2929.11 and 2929.12 under a standard that is equally deferential to the sentencing court. That is, an appellate court may vacate or modify any sentence that is not clearly and convincingly contrary to law only if the appellate court finds by clear and convincing evidence that the record does not support the sentence.

{¶ 73} Instead, it is my view that the Ohio Supreme Court in *Marcum* was once again trying to remind appellate courts that when reviewing felony sentences, we have an obligation to ensure that a sentence is not clearly and convincingly contrary to law under R.C. 2929.11 and 2929.12 as well as the statutes that require explicit findings of fact. That means that appellate courts must independently review the record to determine if the trial court, after considering the seriousness and recidivism factors in R.C. 2929.12, imposed a sentence that is (1) "reasonably calculated to achieve" the three overriding purposes of felony sentencing, (2) "commensurate with and not demeaning to the seriousness of the offender's conduct and its impact upon the victim," and (3) "consistent with sentences imposed for similar crimes committed by similar offenders." R.C. 2929.11. If an appellate court cannot look at the record to determine whether the sentence satisfies these parameters, can we ever meaningfully review a sentence?

{¶ 74} The separate opinion also states that "*Marcum's* expansion of R.C. 2953.08(G)(2)(a) will lead to inconsistent appellate decisions." First, as I stated, *Marcum* did not expand sentencing review. But also, it is my view that if appellate courts diligently performed their duty when reviewing felony sentences, then offenders in Ohio would not have to hold their breath at arraignment while waiting to see if they drew the "judicial short straw."

{¶ 75} S.B. 2 was enacted, in part, because "there was a notion that offenders received disparate sentences for the same crime in different sections of the state." Painter at 537. We know that is certainly true in Cuyahoga County. Under S.B. 2,

however, appellate review was "intended to ensure that offenders [were] sentenced consistently." Painter at 538. Thus, if we actively reviewed felony sentences, there would be more consistency in sentencing, not less. As I previously stated:

> I believe that there is a troubling trend occurring throughout appellate courts in this state that will, if not [reined] in by the Ohio Supreme Court, essentially eliminate meaningful review of felony sentences. As one appellate judge stated, "'appellate review of sentencing is under assault.'" *State v. Beverly*, 2d Dist. Clark No. 2015-CA-71, 2016-Ohio-8078, ¶ 42, 75 N.E.3d 847 (Donovan, J., dissenting), quoting More Than a Formality: The Case for Meaningful Substantive Reasonable Review, 127 Harv.L.Rev. 951, 951 (2014). I could not agree more with the dissenting judge in *Beverly* that "[t]his assault is unjustified and contrary to legislative intent when we look at the legislative history of S.B. 2 and H.B. 86." *Id.*

*Roberts,* 8th Dist. Cuyahoga No. 104474, 2017-Ohio-9014, at ¶ 22.[7]

{¶ 76} If all an appellate court is required to do is make sure that a sentence is within the statutory limits set by the legislature and make sure that the trial court states that it considered R.C. 2929.11 and 2929.12, then we effectively have no review at all. R.C. 2953.08(G)(2) mandates that appellate courts consider the record. But if appellate courts cannot consider whether the record comports with R.C. 2929.11 and 2929.12, then the record — and our review — is meaningless.

---

[7] This does not mean, however, that Johnson's argument that his sentence was contrary to law because his codefendant received a lesser sentence has merit. *See State v. Blackley*, 8th Dist. Cuyahoga No. 100574, 2014-Ohio-3140, ¶ 15 ("There is a statutory mandate for consistency in sentencing, however, consistency does not require that identical sentences be imposed for co-defendants."). This is because "'[a]lthough the offenses may be similar, distinguishing factors may justify dissimilar treatment.'" *State v. Torres*, 8th Dist. Cuyahoga No. 99595, 2013-Ohio-5030, ¶ 82, quoting *State v. Dawson*, 8th Dist. Cuyahoga No. 86417, 2006-Ohio-1083.

**{¶ 77}** With this review in mind and looking at the record in this case, I do not agree with the lead opinion that it does not support the sentence. Johnson and two codefendants went to Johnson's aunt's home to retrieve a gun that they believed they were "entitled to." Johnson and the codefendants robbed Johnson's aunt and her son at gunpoint. Johnson's aunt and her son were home. The aunt spoke at the sentencing hearing. She explained that it was "the worst thing" she ever experienced. She stated that she "had to step in front of [her] son" because she did not want him to get shot. She grabbed her son, held him, and prayed. She could not imagine "burying one of [her] kids." The aunt further explained that she was thankful that her daughter was not home when it happened. At the time of the offense, Johnson was on probation for felonious assault.

**{¶ 78}** In mitigation, Johnson's attorney explained that Johnson was only 20 years old and that he turned himself in to police. Johnson also sent text messages to the victims after he robbed them to apologize, telling them "it wasn't supposed to happen like that." Johnson's defense counsel also explained that Johnson witnessed his father abuse his mother for many years. Johnson told the court that he did not have anything to say.

**{¶ 79}** The trial court explained that Johnson had "violent criminal history," including riot, disorderly conduct, assault, attempted assault, breaking and entering, resisting, aggravated menacing, and several counts of criminal trespass.

> According to the presentence investigation report, Johnson was a "moderate" risk to reoffend. The trial court informed Johnson that it intended to "remove [him] from society for as long as [it] could." The

trial court stated that Johnson was "a monster" and told Johnson, "You frankly scare me.  Your behavior is inappropriate throughout this case." The judge further stated that this was a "serious felony of the first degree offense that was committed while [Johnson was] on community control" for felonious assault in another case.

**{¶ 80}** Therefore, it is my view that this record support the trial court's sentence under R.C. 2929.11 and 2929.12, and I would overrule Johnson's second assignment of error.