**[Cite as *State v. Beedy*, 2020-Ohio-3198.]**

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**CLARK COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 2019-CA-71 |
| | : | |
| v. | : | Trial Court Case No. 2019-CR-253A |
| | : | |
| BRANDON BEEDY | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 5th day of June, 2020.

. . . . . . . . . . .

JOHN M. LINTZ, Atty. Reg. No. 0097715, Assistant Prosecuting Attorney, Clark County Prosecutor's Office, Appellate Division, 50 East Columbia Street, Suite 449, Springfield, Ohio 45502
        Attorney for Plaintiff-Appellee

ADAM JAMES STOUT, Atty. Reg. No. 0080334, 5335 Far Hills Avenue, Suite 109, Dayton, Ohio 45429
        Attorney for Defendant-Appellant

. . . . . . . . . . . .

HALL, J.

{¶ 1} Brandon Beedy appeals from his conviction following a guilty plea to one count of attempted involuntary manslaughter, a second-degree felony.

{¶ 2} In his sole assignment of error, Beedy contends the trial court erred by making generalized statements about drug use by defendants to support imposing a statutory maximum eight-year prison term in his case.

{¶ 3} The record reflects that Beedy was indicted on one count of involuntary manslaughter and one count of child endangering in connection with the death of his 21-month-old child. He subsequently entered into a plea agreement that provided for him to plead guilty to an amended charge of attempted involuntary manslaughter. The agreement also provided for dismissal of the child-endangering charge and preparation of a presentence investigation report before sentencing. Finally, the agreement obligated Beedy to agree to testify against Caitlyn Heinzen, the child's mother. During an August 14, 2019 plea hearing, the prosecutor read facts into the record establishing that Beedy and Heinzen left the child unattended in a crib for so long that the child died of dehydration. (Plea Tr. at 3-4.) At the conclusion of the hearing, the trial court accepted Beedy's plea and ordered a presentence investigation.

{¶ 4} The case then proceeded to a September 5, 2019 sentencing hearing for Beedy and Heinzen, who separately also had pled guilty to attempted involuntary manslaughter. At the outset of the hearing, defense counsel argued among other things that Beedy was "battling a pretty bad drug addiction" and had been "battling it for years." (Sentencing Tr. at 4.) Counsel noted that Beedy had been involved with a drug-treatment program. (*Id.*) Counsel requested community control so that Beedy could continue drug treatment. (*Id.* at 5.) When Beedy addressed the court, he acknowledged having a drug

problem and "working on it." (*Id.* at 13.). He asked the trial court for a chance to prove himself. (*Id.* at 13-14.) After Heinzen and her attorney spoke, the prosecutor noted that the child had been left alone for an entire day and had died of dehydration. (*Id.* at 15.) The prosecutor noted that the child, whose skin was permanently stained with feces, had been dead for hours before being discovered. (*Id.* at 15-16.) The prosecutor then asserted that Beedy and Heinzen had been under the influence of drugs during the time that the child died of dehydration. (*Id.* at 16-17.) The prosecutor requested eight-year prison sentences for both defendants.

{¶ 5} The trial court then addressed both defendants and reasoned in part as follows:

> Methamphetamine, THC, cocaine, Fentanyl: These are the substances that were found to be in the system of Mr. Beedy just two days after [the child] died.
>
> Methamphetamine, THC, cocaine, opiates, Tramadol and Fentanyl: These are the substances found to be in the system of Miss Heinzen just two days after the death of her son.
>
> Both defendants essentially blame their drug problems for this tragedy, and stood in this courtroom and assured the Court that they're ready to capitalize on that one more chance and to do whatever it takes to overcome this problem; and the point was made that perhaps, finally, they will be able to overcome this drug problem if the Court puts some kind of hammer over their head, that being prison time.
>
> That that's what it will take to finally get them off drugs. The problem

with that argument is they have essentially had a hammer over their heads since January 12th, knowing that they were responsible for this tragedy.

Knowing they were being investigated, knowing they would eventually be charged, knowing we would eventually get to today.

So knowing all of that, Mr. Beedy went to McKinley Hall on March the 1st. He was placed in a program; and after March 20th, there was no contact with McKinley Hall until May 29th, over two months.

On July 10th, the case manager made the effort to contact Mr. Beedy to find out why he wasn't coming to treatment. It's not really important why he wasn't going.

The fact of the matter is he wasn't going. But he was told to go to a group meeting that night, which he did go to on July 10th; but that was the last time they heard from him until August 29th.

* * *

So they have had a hammer over their head. Surely they knew the Court was going to look at any progress they may have made in addressing their drug program. They knew today would come. That hammer was over their head, and yet they did not do everything they needed to do.

But today is different; they are going to do everything they need to do today because there would be, I suppose, two hammers over their head.

Both defendants have told the Court that they are going to have to live with this the rest of their lives, and that is true; but the key word there is live. They will be living, unlike [their child].

And not that this would be an excuse but if we were looking at 18- or 19-year-old parents who are virtually kids themselves, again, it certainly wouldn't be an excuse; but it could be slightly more understandable. But we are dealing with a 28 and 34 year old.

*It always amazes me that defendants will come into the courtroom and tell the Court that they have a drug problem, that they need another chance, and yet we are all told that if we get involved with dangerous drugs like this, we will end up either in prison or dead.*

* * *

Incidentally, possessing and ingesting the drugs I mentioned earlier, those are all felony offenses. We seem to gloss over that when we talk about drug problems, but essentially, you were committing felony offenses and not taking care of your child. This is violating a duty of care, protection and support to the extreme.

The Court is going to follow the State's recommendation and impose a sentence of eight (8) years in the Ohio State Penitentiary on each defendant. * * *

(Emphasis added.) (*Id.* at 19-22.)

{¶ 6} On appeal, Beedy challenges the trial court's imposition of an eight-year prison sentence. His argument focuses exclusively on the trial court's reference to the defendants' entering the courtroom and claiming to have a drug problem. He reasons that the italicized paragraph quoted above near the end of the trial court's remarks demonstrated judicial bias. His entire substantive argument is as follows: "This

generalizing statement about all defendants that have drug issues that come into the trial court showed that the court had a bias against his case prior to Mr. Beedy pleading guilty and regardless of the underlying facts, resulting in the imposition of the eight year sentence. Also, this case did not involve an act of violence, which the trial court noted. Consequently, the sentence is contrary to law under R.C. 2953.08(G)(2)." (Appellant's brief at 7.)

{¶ 7} Upon review, we find Beedy's assignment of error to be unpersuasive. Under R.C. 2953.08(G)(2), we may vacate or modify a felony sentence if we find by clear and convincing evidence that the record does not support the sentence or the sentence is otherwise contrary to law. *State v. Damiano*, 2d Dist. Champaign No. 2017-CA-31, 2018-Ohio-4761, ¶ 9 (citing additional cases). Beedy asserts that his eight-year sentence is contrary to law because the trial court's remarks exhibited improper judicial bias against him.

{¶ 8} We recognize that "a judicial bias claim may be interpreted 'as an argument that [the defendant's] sentence is contrary to law based on a due process violation.' " *State v. Johnson*, 8th Dist. Cuyahoga No. 107528, 2019-Ohio-4668, ¶ 26, quoting *State v. Frazier*, 2017-Ohio-8307, 98 N.E.3d 1291, ¶ 15 (8th Dist.). We also note, however, that a judge is presumed unbiased and that "the appearance of bias must be compelling in order to overcome the presumption." *Id.*, quoting *State v. Filous*, 8th Dist. Cuyahoga No. 104287, 2016-Ohio-8312, ¶ 14.

{¶ 9} Here the challenged comment fails to establish impermissible judicial bias. The trial court engaged in a lengthy explanation of why it was unpersuaded by Beedy's claim that he would change his ways and get off of drugs if the trial court would allow him

to pursue drug treatment instead of sending him to prison. As set forth above, near the end of its remarks, the trial court added: "It always amazes me that defendants will come into the courtroom and tell the Court that they have a drug problem, that they need another chance, and yet we are all told that if we get involved with dangerous drugs like this, we will end up either in prison or dead." (Sentencing Tr. at 22.).

{¶ 10} We see absolutely nothing in this comment by the trial court that is indicative of impermissible judicial bias. Beedy characterizes the trial court's comment as an improper generalized statement about all defendants who appear in court with drug problems. It is clear, however, that the trial court was including Beedy and Heinzen within that group of defendants. Although the trial court couched its comment broadly, the remark undeniably was directed at Beedy and his specific circumstances. Regardless, we simply are unpersuaded that there was anything improper about the remark, particularly when read in the context of the trial court's full statements. Accordingly, we overrule Beedy's assignment of error.

{¶ 11} The judgment of the Clark County Common Pleas Court is affirmed.

. . . . . . . . . . . . .

FROELICH, J. and WELBAUM, J., concur.

Copies sent to:

John M. Lintz
Adam James Stout
Hon. Douglas M. Rastatter