[Cite as *State v. Cammack*, 2020-Ohio-2942.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

STATE OF OHIO,                          :

    Plaintiff-Appellee,          :

                              No. 108705

v.                                      :

JAMAL CAMMACK,                          :

    Defendant-Appellant.          :

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** May 14, 2020

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-18-632481-A

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, Marc D. Bullard and Brandon A. Piteo, Assistant Prosecuting Attorneys, *for appellee.*

Anzelmo Law and James A. Anzelmo, *for appellant.*

ANITA LASTER MAYS, P.J.:

{¶ 1} Defendant-appellant Jamal Cammack ("Cammack") appeals his ten-year prison sentence issued after he pled guilty to multiple offenses. We affirm.

## I. Background and Facts

{¶ 2} In 2015, in response to the local councilman's complaint, the Cleveland Police Department began working to eradicate gang activity in the area of East 156th Street and St. Clair Avenue in the Collinwood area. While operations were ongoing, Cammack became a target of a drug sting investigation by the department's gang impact unit ("GIU") who received reports in August 2016 that Cammack was selling heroin. The GIU was also advised that Cammack was a high-ranking member of the 156 Bricks gang that was affiliated with the Heartless Felons. GIU detectives conducted eight undercover drug buys from Cammack for a total of 10.20 grams of heroin and purchased a firearm.

{¶ 3} On September 27, 2016, without the knowledge of the GIU, Cammack was detained by police for traffic violations and officers allegedly observed suspected drug activities. Cammack was arrested, handcuffed, and attempted to escape but was apprehended down the block. Cammack had 4.09 grams of heroin, 0.5 grams of cocaine, $1,665 in currency, two cell phones, and a scale with residue. The search warrant execution at Cammack's residence revealed drug packaging materials with cocaine residue, a scale with heroin residue, a shotgun barrel, gloves, and 82.93 grams of heroin.

{¶ 4} Two cases were filed for a total of 38 charges for gang activity, drug trafficking and possession, and possession of criminal tools. Counts 1-31 arose from the undercover operation and serve as the underlying case in this appeal. Counts 32-38 for drug possession and trafficking, possession of criminal tools, resisting

arrest and escape were issued due to the traffic stop in *State v. Cammack*, Cuyahoga C.P. No. CR-18-631454.

{¶ 5} On April 30, 2019, Cammack entered a guilty plea to what the state labeled "a packaged plea" that encompassed the charges in the instant case and the traffic stop case. Cammack pled guilty to the following:

Count 1:     Criminal gang activity 2923.42(A), second-degree felony.

Count 2:     Trafficking offense 2925.03(A)(2), first-degree felony.

Count 5:     Possessing criminal tools 2923.24(A), fifth-degree felony with forfeiture specification(s) (R.C. 2941.1417).

Count 9:     Trafficking offense 2925.03(A)(1), fourth-degree felony.

Count 15:    Trafficking offense 2925.03(A)(1), fifth-degree felony.

Count 21:    Trafficking offense 2925.03(A)(1), fifth-degree felony, with firearm specification(s) - 1 year (2941.141), forfeiture specification(s) (2941.1417).

Count 24:    Having weapons while under disability 2923.13(A)(2) F3.

Count 29:    Trafficking offense 2925.03A(1) F3.

Count 32:    Trafficking offense 2925.03A(2) F3 with forfeiture specification(s) (2941.1417), schoolyard specification(s).

Count 34:    Trafficking offense 2925.03A(2) F4 with forfeiture specification(s) (2941.1417), schoolyard specification(s).

Remaining counts are nolled. The [trial] court accepts defendant's guilty plea. Defendant to forfeit to the state: digital scale, gloves and/or shotgun case with barrel, gun, serial # PBR6291, 2 cell phones, and $1,665.00 U.S. currency. 3 years discretionary post release control explained for Counts 5, 9, 15, 21, 24, 29, 32, and 34.

Journal entry no. 108825412 (May 21, 2019), p. 1.

{¶ 6}   On May 21, 2019, Cammack was sentenced to imprisonment for ten years.  Consecutive terms of two years were imposed on the Count 1 conviction for criminal gang activity and eight years for the Count 2 trafficking offense.  The remaining sentences, including specifications, were run concurrent with the ten-year period.

{¶ 7}   Cammack appeals.

## II.  Assignments of Error

{¶ 8}   Cammack assigns as plain error the trial court's sentence in this case:

I.   The trial court erred by failing to merge the Count 1 gang activity offense with the remaining offenses.

II.  The trial court unlawfully ordered consecutive sentences in violation of Cammack's constitutional rights.

## III.  Discussion

### A.  Merger

{¶ 9}   R.C. 2941.25 governs allied offenses and  provides that "[w]here the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one."  R.C. 2941.25(A).  "An allied offenses claim is consistent with an admission of guilt and therefore is not waived by pleading guilty to offenses that might be allied offenses of similar import." *State v. Rogers*, 143 Ohio St.3d 385, 2015-Ohio-2459, 38 N.E.3d 860, ¶ 19.  A trial court does not have a duty to inquire about allied offenses if defense counsel fails to raise the issue at sentencing.  *Id.* at ¶ 6.

**{¶ 10}** In addition,

> An accused's failure to raise the issue of allied offenses of similar import in the trial court forfeits all but plain error, and a forfeited error is not reversible error unless it affected the outcome of the proceeding and reversal is necessary to correct a manifest miscarriage of justice. Accordingly, an accused has the burden to demonstrate a reasonable probability that the convictions are for allied offenses of similar import committed with the same conduct and without a separate animus; absent that showing, the accused cannot demonstrate that the trial court's failure to inquire whether the convictions merge for purposes of sentencing was plain error.

*Rogers* at ¶ 3.

**{¶ 11}** Shortly before *Rogers* was issued, the Ohio Supreme Court explained the logistics of a merger analysis:

> Rather than compare the elements of two offenses to determine whether they are allied offenses of similar import, the analysis must focus on the defendant's conduct to determine whether one or more convictions may result because an offense may be committed in a variety of ways and the offenses committed may have different import. No bright-line rule can govern every situation.
>
> As a practical matter, when determining whether offenses are allied offenses of similar import within the meaning of R.C. 2941.25, courts must ask three questions when defendant's conduct supports multiple offenses: (1) Were the offenses dissimilar in import or significance? (2) Were they committed separately? and (3) Were they committed with separate animus or motivation? An affirmative answer to any of the above will permit separate convictions. The conduct, the animus, and the import must all be considered.

*State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.3d 892, ¶ 30-31.

**{¶ 12}** The state explained at the hearing that the offer was a "packaged plea" for both cases. (Tr. 24.) Cammack was offered two plea options in the instant case as part of the first component of the package:

[O]ption one essentially results in the deletion of Count 1, participating in criminal gang activity, and also would result in the deletion of the three-year firearm specification contained in Counts 21, 22, and 23. That would require — less those amendments and deletions it would be a plea of guilty to the remainder of the indictment. An additional term of that plea would be an agreed ten years of incarceration.

(Tr. 24-25.)

**{¶ 13}** The state continued:

Having said that, it's my understanding the defendant wishes to exercise plea option number two, and your Honor, plea option number two would require defendant's guilty plea to Count 1 as indicted, participating in a criminal gang in violation of code section 2923.42 subsection A. That's a felony of the second degree.

Also defendant would enter plea of guilty to Count 2 as indicted, drug trafficking, in violation of code section 2925.03 subsection (A)(2). That's a felony of the first degree. That carries with it a mandatory term of incarceration of 3 to 11 years and a mandatory fine.

(Tr. 25.)

**{¶ 14}** The state detailed the remaining elements of the instant case's second option that required a plea to a number of the remaining counts and clarified that the option did not include a sentencing agreement. "The state would be free to argue for * * * as much time as it wants and that's what the state's intention is as part" of the case. (Tr. 27.)

**{¶ 15}** Next, the state addressed the second component of the package arising from the traffic stop case:

Next, your Honor, as part and parcel of that plea is 631454. It's my understanding defendant will enter a plea of guilty to Count 2 as indicted, drug possession, felony of the fifth degree with the forfeiture, and Count number 4, possession of criminal tools as indicted with forfeiture specifications, and then Count 6, resisting arrest, misdemeanor of the first degree as indicted.

> If these pleas are forthcoming the state would ask this Court to nolle the remaining counts as relevant to this defendant.

(Tr. 27-28.)

{¶ 16} The trial court confirmed Cammack's understanding of the plea package options. The trial court emphasized that the first option involved a mandatory ten-year sentence and, while the second option involved a lower mandatory minimum, the sentencing range would allow for a total sentence that exceeds ten years.

| | |
|---|---|
| Court: | So do you understand the difference? What you're doing right now you're taking four that you know, all right, but you know what the high end is as opposed to taking the ten and then you don't know if you could have done better. Is that what you're saying? |
| Cammack: | Yes, your Honor. |
| Court: | Okay. All right. I just want to make sure he understands. |
| * * * | |
| State: | [Four years is] the mandatory minimum. [The] State doesn't agree to that. The state intends on asking for a lengthy sentence in this case, your Honor. |

(Tr. 29-30.)

{¶ 17} The R.C. 2923.42 criminal gang activity statute provides in relevant part:

(A) No person who actively participates in a criminal gang, with knowledge that the criminal gang engages in or has engaged in a pattern of criminal gang activity, shall purposely promote, further, or assist any criminal conduct, as defined in division (C) of section 2923.41 of the Revised Code, or shall purposely commit or engage in any act that constitutes criminal conduct, as defined in division (C) of section 2923.41 of the Revised Code.

(B)      Whoever violates this section is guilty of participating in a criminal gang, a felony of the second degree.

R.C. 2923.42(A)-(B).

**{¶ 18}** Criminal conduct is defined as:

the commission of, an attempt to commit, a conspiracy to commit, complicity in the commission of, or solicitation, coercion, or intimidation of another to commit, attempt to commit, conspire to commit, or be in complicity in the commission of an offense listed in division (B)(1)(a), (b), or (c) of this section or an act that is committed by a juvenile and that would be an offense, an attempt to commit an offense, a conspiracy to commit an offense, complicity in the commission of, or solicitation, coercion, or intimidation of another to commit, attempt to commit, conspire to commit, or be in complicity in the commission of an offense listed in division (B)(1)(a), (b), or (c) of this section if committed by an adult.

R.C. 2923.41(C).

**{¶ 19}** The state argues that merger is not appropriate under *Ruff* because the offenses: (1) were not similar in significance or import; (2) were separately committed; and (3) were committed with separate motivation or animus. *Ruff,* 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.3d 892, ¶ 30-31. "An affirmative answer to any of the above will permit separate convictions." *Id.*

**{¶ 20}** Cammack offers that the gang activities are effectively all-encompassing for purposes of merger. In the beginning of 2015, the local councilman requested police intervention to curb the violent heavy gang activity in the area. Law enforcement "converged upon the neighborhood in several locations and started doing proactive law enforcement techniques." (Tr. 58.) While the gang activity investigation began in 2015, GIU detectives testified that they did not initiate the drug sting operation until August 2016, after receiving notice that Cammack was

selling drugs. The detectives were also informed that Cammack was a high-level member of the 156 Bricks gang.

{¶ 21} The gang activity indictment covers the January 1, 2015, to October 17, 2016 timeframe. The indictment lists: drug trafficking, drug possession, having weapons while under disability, carrying concealed weapon, possession of criminal tools, aggravated riot, participating in criminal gang, felonious assault, and burglary. The counts that specifically relate to drug sale and related activities cover the August and September 2016 timeframe. The indictments are for transactions and activities that were separately committed, at separate times, and resulted in separate, identifiable harm. According to the record, Cammack said that he sold narcotics to support himself, thus providing a motive separate from that of the gang activity involvement.

{¶ 22} Based on the foregoing, we do not find by our plain error review that Cammack has presented a "reasonable probability that the convictions are for allied offenses of similar import committed with the same conduct and without a separate animus." *Roger*s, 143 Ohio St.3d 385, 2015-Ohio-2459, 38 N.E.3d 860, at ¶ 3.

{¶ 23} Cammack's first assignment of error is overruled.

**B. Consecutive Sentences**

{¶ 24} Cammack's second assigned error is that the trial court unlawfully ordered consecutive sentences in violation of his constitutional rights.

> R.C. 2953.08(G)(2) provides, in part, that when reviewing felony sentences, the appellate court's standard is not whether the sentencing court abused its discretion; rather, if this court "clearly and convincingly" finds that (1) "the record does not support the sentencing

court's findings under" R.C. Chapter 2929 or (2) "the sentence is otherwise contrary to law," then we may conclude that the court erred in sentencing. *See also State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231.

*State v. Johnson*, 8th Dist. Cuyahoga No. 107528, 2019-Ohio-4668, ¶ 6.

{¶ 25} A trial court is also required to consider the principles and purposes of felony sentencing set forth in R.C. 2929.11 and the sentencing factors set forth in R.C. 2929.12. *See State v. McGowan*, 8th Dist. Cuyahoga No. 105806, 2018-Ohio-2930, ¶ 11-12. Review of R.C. 2929.11 and 2929.12 applies to the imposition of individual sentences and consecutive service may not be ordered until the trial court imposes a sentence for each individual count. *State v. Gwynne*, 158 Ohio St.3d 279, 2019-Ohio-4761, 141 N.E.3d 169, ¶ 17. However, Cammack does not argue that the trial court failed to consider the felony sentencing factors under R.C. 2929.11 and 2929.12, but focuses on the imposition of consecutive sentences under R.C. 2929.14(C)(4).

{¶ 26} "Although a general presumption exists for the imposition of concurrent sentences, R.C. 2929.41(A) expressly recognizes certain exceptions, including when the record requires the imposition of consecutive sentences under R.C. 2929.14(C) for multiple offenses." *State v. Rice*, 8th Dist. Cuyahoga No. 102443, 2015-Ohio-3885, ¶ 9.

{¶ 27} A trial court must make specified findings pursuant to R.C. 2929.14(C)(4) before it imposes consecutive sentences. *State v. Magwood*, 8th Dist. Cuyahoga No. 105885, 2018-Ohio-1634, ¶ 62. Specifically, the court must find:

(1) consecutive terms are required to protect the public from future crime or to punish the offender, (2) consecutive terms are not disproportionate to the seriousness of the conduct and danger posed to the public, and (3) either the offender committed at least one offense while awaiting trial or sentencing, that multiple offenses were part of a course of conduct and the harm caused was so great or unusual that a single term does not adequately reflect the seriousness of the offender's conduct, or that the offender's criminal history is such that consecutive terms are necessary to protect the public. R.C. 2929.14(C)(4); *State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.3d 659, ¶ 22, 26. In addition to making the findings at the sentencing hearing, the trial court must also "incorporate its findings into its sentencing entry, but it has no obligation to state reasons to support its findings." *Bonnell* at ¶ 37.

{¶ 28} The trial court stated:

Count 2 and Count 21 will run consecutive to each other and consecutive to the firearm specification for a total sentence of 10 years at the Lorain Correctional Institution. I do find that a consecutive sentence is necessary pursuant to 2929.19(B)(2)(b) and 2929.14(C)(4).

The Court finds it is necessary to punish the offender and protect the public from future crime, and is not disproportionate to the seriousness of the conduct and the danger posed by the defendant.

One or more offenses were committed while offender was awaiting trial, on community control sanctions or postrelease control.

That two or more offenses are part of one or more courses of conduct, and the harm caused is so great or unusual that a single prison term would not adequately reflect the seriousness of the conduct.

> So those are my reasons for the consecutive sentences. I'm not going to impose any fines or court costs. Again, you have previously been declared indigent.

(Tr. 75-76.)

{¶ 29} Cammack concedes the trial court addressed the requisite factors for consecutive sentences but argues the record does not support proper contemplation of mitigation factors such as his lack of a lengthy criminal record, no prior incarcerations, and his remorsefulness. R.C. 2929.12(E). Cammack also cites his participation in honors classes in school and in skills and training classes during his incarceration as additional fodder for consideration. R.C. 2929.12(C)(3).

{¶ 30} Cammack also states that the gun offense was instigated by the undercover detective with whom Cammack had "developed a relationship." (Tr. 68.) The detective told Cammack that his girlfriend's ex-boyfriend broke into their house and they needed protection. As defense counsel stated, "[b]asically, he's asking [Cammack] to give him a gun. I hope the court takes that into consideration." (Tr. 68.) Cammack contended he was not in the business of selling weapons and did not commit any violent acts.

{¶ 31} In addition to informing the trial court of the mitigation factors, defense counsel also expressed concern that the activities of Cammack's codefendant in the traffic stop case did not taint the sentencing process for Cammack.

> As I stated, my client — we're here hoping that he's judged for his own actions. He's never served a prison term. I believe that there is a presumption that if a person has not served a prior prison term, that

the presumption is he would be sentenced to the minimum period of incarceration, and we're hoping that the Court takes that into consideration, and in fact sentences [Cammack] to a period of four years.

(Tr. 68.) In addition, Cammack expressed his remorse to the trial court and advised that he would use his time to become a better man.

{¶ 32} The trial court expressed great concern about the drug activities and the form of violence that it visited on the community but also acknowledged hopes for rehabilitation:

> You're violent in the harm you're causing your community. I appreciate the government wants me to send you away. The total amount of years you're somewhere in the neighborhood of about 38 years I can give you right now. That's like a life sentence for you. That's what they would want.
>
> Your lawyer is correct, and I sat with your lawyer for a long time. You have taken responsibility so that is a plus for you. You don't have a significant criminal history. That's a plus for you, but your conduct deserves to be punished, and you by your own words said, I'm taking my punishment like a man, I get what I deserve.
>
> So I hope you go down there, and I hope you do use that degree, and I hope your lawyer is right but what a waste. Your community needs somebody who is strong. You're a big guy. You should be a leader in the community. You should be telling all those folks in the back and setting an example.
>
> Their hearts must be breaking back there looking at you sitting in orange, so I do hope you come out. I hope you rehabilitate yourself. I hope you set an example to the next generation[.] * * *
>
> All right. I'm done preaching.

(Tr. 71-72.)

**{¶ 33}** The record supports the trial court's lawful imposition of consecutive sentences and incorporation of those findings in its journal entry. *Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.3d 659, ¶ 22, 26, 37.

**{¶ 34}** Cammack's second assignment of error is overruled.

## IV. Conclusion

**{¶ 35}** The trial court's judgment is affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

ANITA LASTER MAYS, PRESIDING JUDGE

MICHELLE J. SHEEHAN, J., CONCURS;
LARRY A. JONES, SR., J., DISSENTS WITH SEPARATE OPINION


LARRY A. JONES, SR., J., DISSENTING:

**{¶ 36}** Respectfully, I dissent. I would sustain Cammack's first assignment of error and find that Count 1, participating in criminal gang, should have merge with the other offenses.

**{¶ 37}** In *State v. Smith*, 2016-Ohio-5062, 70 N.E.3d 150 (4th Dist.), the appellant made a similar argument, claiming that the trial court committed plain

error when it did not merge his conviction for engaging in pattern of corrupt activity with his conviction for participating in criminal gang because the harm resulting from each offense, to wit: drug trafficking, was the same, the conduct was the same, and the convictions resulted from the same motivations. The Fourth Appellate District agreed with the appellant, finding that there was "no evidence in the record that demonstrates that one charge produced separate harm from the other." *Id.* at ¶ 118. The court further found that there was no evidence that the offenses were committed separately; the appellant's incriminating conduct was his active role in a drug operation. *Id.* Finally, the court determined that there was no evidence to support the existence of different motivations for the two offenses; thus, the offenses should merge. *Id.*

{¶ 38} In this case, the sergeant who spoke at Cammack's sentencing hearing told the court that he and another detective from the gang unit were already working on gang activity in the area when Cammack's name came up as a high-level gang member and a drug dealer, so the detectives conducted a sting operation. The almost two-year period of criminal gang activity in Count 1 of the indictment includes drug trafficking, having weapons while under disability, drug possession, and possession of criminal tools. Thus, the dates of the sting operation activity fall within the dates of the criminal gang activity. As in *Smith*, the state relied on the exact same predicate events to support both the participating in criminal gang charge and the predicate offenses charges. *See Smith* at *id.* I also cannot discern from the limited record before us that the harm resulting from participating in

criminal gang offense and the predicate offenses is separate and identifiable; although it is certainly possible, there is no evidence in the record that demonstrates that Smith's activity in a criminal gang produced harm separate from his other offenses.

{¶ 39} According to the state, Cammack was "not only selling dangerous drugs" but was "doing so as part of a dangerous gang." The majority notes that Cammack sold narcotics to support himself and that motive was separate from his participation in a gang. As part of the presentence investigation report, Cammack stated that his only job was selling drugs. He sold drugs as part of a gang. Thus, he was part of a gang as a way to support himself and his motivation for committing the offense of participating in a criminal gang and the other offenses is the same.

{¶ 40} Thus, the evidence of the drug operation, specifically the predicate offenses of drug trafficking, drug possession, possessing criminal tools, and having weapons while under disability, served to show that Cammack was both engaging in those offenses and participating in a criminal gang. The evidence in the record does not demonstrate that his conduct served to commit the participating in criminal gang offense separate from the other offenses.

{¶ 41} Therefore, I would find that the offenses of participating in criminal gang would merge into the other offenses and would sustain the first assignment of error.