[Cite as *State v. Harris*, 2025-Ohio-2774.]

**COURT OF APPEALS OF OHIO**

**EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA**

STATE OF OHIO,                          :

    Plaintiff-Appellee,          :

                        No. 114569

    v.                                   :

LEONDRE HARRIS,                         :

    Defendant-Appellant.         :

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** August 7, 2025

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-24-688197-A

***Appearances:***

Michael C. O'Malley, Cuyahoga County Prosecuting
Attorney, and Patrick White, Assistant Prosecuting
Attorney, *for appellee.*

Flowers & Grube and Kendra N. Davitt, *for appellant.*

MICHAEL JOHN RYAN, J.:

{¶ 1} Defendant-appellant Leondre Harris ("Appellant") appeals his
conviction and sentence on one count of felonious assault.[1] For the reasons that

---

[1] Appellant was also convicted of one count of aggravated menacing but does not
challenge this conviction on appeal.

follow, we affirm.

{¶ 2} On January 22, 2024, Appellant was indicted on one count of felonious assault (serious physical harm), a second-degree felony pursuant to R.C. 2903.11(A)(1); one count of felonious assault (deadly weapon), a second-degree felony pursuant to R.C. 2903.11(A)(2); and one count of aggravated menacing, a first-degree misdemeanor pursuant to R.C. 2903.21(A). The felonious assault charges were accompanied by notices-of-prior-conviction and repeat-violent-offender specifications.

{¶ 3} Appellant filed a notice of self-defense during pretrial proceedings. The matter proceeded to a jury trial.[2]

{¶ 4} The facts that gave rise to this event occurred on Sunday, January 7, 2024, at Neighbors Bar and Grill in the Westpark neighborhood of Cleveland. Appellant went to Neighbors to order takeout. During his time at the bar, he harassed and inappropriately touched customers, including a nine-month pregnant woman. He also attempted to kiss a customer. Appellant eventually ordered his takeout but was upset with the cost of the food and demanded a refund.

{¶ 5} After roughly an hour, the bartender victim informed Appellant that if he did not stop harassing customers he would be asked to leave. Appellant did not comply and was asked to leave. Appellant refused. The bartender, leaning over the

---

[2] The notices-of-prior-conviction and repeat-violent-offender specifications were tried to the bench.

bar, shoved appellant. The bartender then walked around the bar to forcibly escort Appellant from the premises and the two men began fighting. Appellant quickly took the upper hand. The two men were separated by bar employees. This initial encounter lasted about a minute. Thinking Appellant had finally calmed down, one of the bar employees released him. The bartender, who had already stopped fighting, tried to walk away when Appellant turned and punched the unsuspecting bartender in the face. Appellant began to repeatedly punch the bartender, hitting him at least 12 times in the face and body before picking up a barstool. He threw the barstool at the bartender, hitting him over the back of his head. Appellant then punched the bartender at least three more times. Appellant, who testified on his own behalf, testified that he struck the bartender with the barstool because he heard the bartender state, "Where is the gun?" Appellant insisted he only hit the bartender with the barstool because he felt his life was in danger.

{¶ 6} Appellant did not leave but remained in the bar arguing with employees. Several minutes passed and all had seemed to calm down when Appellant suddenly went behind the bar to where the bartender was attending to his injuries. Appellant began to push the bartender and then started punching him again, punching him several more times, while the bartender tried to defend himself from Appellant's blows. The attack seemed to stop again for several more minutes, but Appellant went at the bartender again. The bartender attempted to defend himself by holding a dishpan as a shield. Appellant still did not leave, but remained at the bar arguing with the bartender and other staff until the police arrived.

{¶ 7} The bartender went to the hospital and received treatment for two broken orbitals, a broken nose, a deviated septum, a concussion, and a laceration to the back of his head that required several stitches. The bartender testified that he had been unable to work since the incident due to his injuries.

{¶ 8} A 16-minute video of the incident was played for the jury and entered into evidence.

{¶ 9} The jury found Appellant guilty of one count of felonious assault (deadly weapon) and one count of aggravated menacing but acquitted him of the other felonious assault (serious physical harm). The trial court found Appellant guilty of the attending specifications and sentenced Appellant to a total of 16 – 20 years in prison.

{¶ 10} On appeal, Appellant raises the following assignments of error:

I.   The trial court erred by denying Appellant's request for an instruction on self-defense.

II: The trial court erred in prohibiting Appellant's use of the State's evidence during his examination of witnesses and in denying his motion for a mistrial based on the same.

III: The trial court committed structural error by assisting the prosecution.

IV: The trial court erred as a matter of law by penalizing the Defendant's decision to defend himself at trial during sentencing.

V: The cumulative impact of numerous errors at trial prejudiced Appellant by swaying the outcome of his trial.

{¶ 11} In the first assignment of error, Appellant argues that the trial court erred when it refused to give the jury a self-defense instruction.

{¶ 12} The trial court has the discretion to determine whether the evidence adduced at trial is sufficient to support a requested jury instruction, and its decision will not be disturbed absent an abuse of that discretion. *State v. Singleton*, 2013-Ohio-1440, ¶ 35 (8th Dist.), citing *State v. Fulmer*, 2008-Ohio-936. A trial court "abuses its discretion when it exercises its judgment in an unwarranted way with respect to a matter over which it has discretionary authority." *Hunter v. Troutman*, 2025-Ohio-366, ¶ 64 (8th Dist.), citing *Johnson v. Abdullah*, 2021-Ohio-3304.

{¶ 13} The affirmative defense of self-defense is governed by R.C. 2901.05(B)(1), which provides:

> A person is allowed to act in self-defense . . . . If, at the trial of a person who is accused of an offense that involved the person's use of force against another, there is evidence presented that tends to support that the accused person used the force in self-defense . . . the prosecution must prove beyond a reasonable doubt that the accused person did not use the force in self-defense . . . .

{¶ 14} A self-defense claim under R.C. 2901.05(B)(1) includes three elements:

> (1) that the defendant was not at fault in creating the situation giving rise to the affray; (2) that the defendant had a bona fide belief that he [or she] was in imminent danger of death or great bodily harm and that his [or her] only means of escape from such danger was in the use of such force; and (3) that the defendant did not violate any duty to retreat or avoid the danger.

*State v. Messenger*, 2022-Ohio-4562, ¶ 14, quoting *State v. Barnes*, 94 Ohio St.3d 21, 24 (2002).

{¶ 15} Defendants are required to present qualitative, legally sufficient evidence supporting each element of self-defense before the State's burden of persuasion under R.C. 2901.05(B)(1) is triggered. *Messenger* at ¶ 19, 25. A defendant's burden of production is satisfied when "'the defendant's evidence and any reasonable inferences about that evidence would allow a rational trier of fact to find all the elements of a self-defense claim when viewed in the light most favorable to the defendant.'" *Id.* at ¶ 25. In *State v. Palmer*, 2024-Ohio-539, the Ohio Supreme Court held that trial courts do not err when they require defendants to present legally sufficient evidence for all elements of self-defense before affording them self-defense jury instructions. *Id.* at ¶ 19. After viewing the evidence in a light most favorable to Appellant, we find that his self-defense claim was unsupported by sufficient evidence.

{¶ 16} The parties concede that Appellant and the bartender's first encounter was "mutual combat," meaning that the men were fighting each other, as opposed to just one of the men being the immediate aggressor. The evidence adduced at trial showed that Appellant was being an unruly patron, touching other customers inappropriately, and continually arguing with the bartender and his fellow employees. When Appellant did not follow the bartender's verbal attempts to get him to leave the bar, the bartender tried to physically remove Appellant from the bar. Appellant put his hand on the bartender's throat, and the bartender responded

with a punch that did not land. After the first encounter ended, the bartender was walking away from Appellant. Instead of retreating, Appellant attacked the bartender, punching him several times and hitting him over the head with a barstool. After a period of time elapsed, during which he could have left the premises and was under no duress, he again attacked the bartender, punching him several more times. After another pause, Appellant attacked the bartender a final time.

{¶ 17} Pursuant to R.C. 2901.09(B), a defendant does not have a duty to retreat before using force in self-defense if they are in a place where they lawfully have a right to be. However, if a defendant is asked to leave the premises and does not comply, their lawful right to remain on the premises may be revoked, potentially making him or her a trespasser. *See State v. Head*, 2023-Ohio-1364, ¶ 40 (8th Dist.) (there was evidence upon which jury could conclude the defendant had a privilege to be in the victim's house and that his privilege was either expressly revoked by the victim telling him to leave or was implicitly revoked by the defendant's commission of a violent crime against the victim). *See also State v. Carr*, 2012-Ohio-1679, ¶ 23 (3d Dist.) (even assuming defendant may have previously had permission to be in the victim's bedroom, that privilege can be verbally revoked).

{¶ 18} Appellant was initially lawfully on the bar premises. But after over an hour of disturbing other customers, he was asked to leave. He had the opportunity to leave several times. Instead of leaving and avoiding any conflict, Appellant

remained on scene and carried out repeated attacks on the bartender. Therefore, Appellant violated his duty to retreat.

{¶ 19} Moreover, Appellant used more force than necessary to defend himself. "'Implicit in th[e] second element of self-defense, i.e. that the defendant's use of deadly force was in "good faith," is the requirement that the degree of force used was "warranted" under the circumstances and "proportionate" to the perceived threat.'" *State v. Ratliff*, 2023-Ohio-1970, ¶ 31 (8th Dist.), quoting *State v. Hendrickson*, 2009-Ohio-4416, ¶ 31 (4th Dist.).

{¶ 20} This court has held that the force used to defend must be at once objectively reasonable and necessary under the facts and circumstances of the case. *Ratliff* at *id.*, citing *State v. Johnson*, 2022-Ohio-2577, ¶ 15 (8th Dist.); *see also Martin v. Cent. Ohio Transit Auth.*, 70 Ohio App.3d 83, 93 (10th Dist. 1990) ("The force used to defend must be objectively necessary and reasonable under the facts and circumstances of the case and in view of the danger apprehended."). Although the force used during the first altercation, which the parties described as "mutual combat," may have been reasonable, the force used during subsequent attacks was neither reasonable nor necessary under the facts and circumstances of the case. After the first encounter ended, Appellant turned and attacked the bartender, punching him several times and hitting him over the head with a barstool. After separate breaks lasting several minutes, Appellant twice again attacked the bartender, punching him several more times.

{¶ 21} Appellant must present legally sufficient evidence for all three elements to receive a self-defense jury instruction — and he has not satisfied his burden of production as to any of the elements. Based on the record before us, the trial court did not abuse its discretion when it determined that a self-defense jury instruction was unwarranted.

{¶ 22} The first assignment of error is overruled.

{¶ 23} In the second assignment of error, Appellant contends that the trial court erred to his prejudice when it did not allow him use of the State's evidence, i.e., the bar's surveillance video.

{¶ 24} A trial court has broad discretion in how it runs its courtroom. "A trial judge has authority to exercise control over the proceedings and the discretion to impose control over the proceedings." *State v. Brunson*, 2020-Ohio-5078, ¶ 17 (8th Dist.). A trial court has "broad discretion in the admission of evidence, and unless it has clearly abused its discretion and the defendant has been materially prejudiced thereby, an appellate court should not disturb the decision of the trial court." *State v. Dobson*, 2025-Ohio-2148, ¶ 54 (8th Dist.), citing *State v. Issa*, 93 Ohio St.3d 49 (2001).

{¶ 25} "'Under Evid.R. 403(A), otherwise relevant evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury.'" *Id.*, quoting Evid.R. 403(A). A determination under Evid.R. 403(A) rests within the discretion of the trial court. *State v. Tyus*, 2020-Ohio-4455, ¶ 17 (9th Dist.).

{¶ 26} The trial court initially allowed the surveillance video to be played several times during the State's case-in-chief including during defense counsel's cross-examination of the State's witnesses. Eventually, the trial court told the parties that the video, once admitted into evidence, would be sent back for the jury to view but that the parties were to no longer play the video for the jury during witness examination. The trial court noted some jurors' obvious discomfort with the content of video and deemed it "upsetting" and "traumatizing." Defense counsel objected and orally moved for a mistrial. The court denied the motion.

{¶ 27} A court has the discretion whether to declare a mistrial. *State v. Price*, 2025-Ohio-2218, ¶ 22 (8th Dist.), citing *State v. Knuff*, 2024-Ohio-902, ¶ 150. In order to establish an abuse of discretion premised upon a failure to grant a mistrial, the moving party must demonstrate material prejudice. *State v. Easter*, 2024-Ohio-1389, ¶ 21 (2d Dist.), citing *State v. Adams*, 2015-Ohio-3954, ¶ 198. "Mistrials need be declared only when the ends of justice so require and a fair trial is no longer possible." *State v. Franklin*, 62 Ohio St.3d 118, 127 (1991).

{¶ 28} The trial court did not abuse its discretion in denying Appellant's motion for a mistrial. Appellant was not precluded from showing the video entirely; in fact, Appellant was allowed to use the video to cross-examine the State's witnesses. Appellant has not shown he was materially prejudiced by the court's action.

{¶ 29} The second assignment of error is overruled.

{¶ 30} In the third assignment of error, Appellant claims the trial court committed structural error by "assisting the prosecution." Specifically, Appellant claims that the trial judge was biased against him.

{¶ 31} A structural error is an error that affects the framework within which a trial proceeds rather than a mere error in the trial process itself. *State v. West*, 2022-Ohio-1556, ¶ 25. Structural error is "a violation of the basic constitutional guarantees that define the framework of a criminal trial; it is not susceptible to harmless-error review but rather, when an objection has been raised in the trial court, is grounds for automatic reversal." *Id.* at ¶ 2, citing *State v. Jones*, 2020-Ohio-3051, ¶ 2, 20.

{¶ 32} Structural error is recognized only in limited circumstances where fundamental constitutional rights are involved. *West* at ¶ 26. Examples include "denial of counsel to an indigent defendant, the denial of counsel of choice, the denial of self-representation at trial, the denial of a public trial, and the failure to instruct the jury that the accused's guilt must be proved beyond a reasonable doubt." *Id.*, citing *Weaver v. Massachusetts*, 582 U.S. 286 (2017). The Ohio Supreme Court has recognized that "[t]he presence of a biased judge on the bench is . . . a paradigmatic example of structural constitutional error." *State v. Sanders*, 92 Ohio St.3d 245, 278 (2001).

{¶ 33} Here, Appellant claims that the trial court demonstrated favoritism toward the State during the trial by questioning witnesses itself, limiting defense counsel's cross-examination of State witnesses, limiting Appellant's testimony, and

by interjecting his (the trial judge's) own opinion into the proceedings. Appellant did not object to the alleged bias; therefore, we review solely for plain error. Pursuant to Crim.R. 52(2), "plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." To demonstrate plain error, Appellant must show, among other factors, that the error affected the outcome of the trial. *State v. Gordon*, 2018-Ohio-259, ¶ 23.

{¶ 34} Generally, a challenge to a trial judge's objectivity must comport with the procedures outlined in R.C. 2701.03(A), which states that "any party to the proceeding or the party's counsel may file an affidavit of disqualification with the clerk of the supreme court . . . ." *State v. Johnson*, 2019-Ohio-4668, ¶ 25 (8th Dist.). Because Harris never filed an affidavit of disqualification, "'[w]e have no authority to determine a claim that a trial judge is biased or prejudiced against a defendant and no authority to void a trial court's judgment based on a claim that the trial judge is biased or prejudiced.'" *Johnson* at *id.*, citing *State v. Williamson*, 2016-Ohio-7053 (8th Dist.). Ohio courts have held, however, "that a judicial bias claim may be interpreted as an argument that the defendant's sentence is contrary to law based on a due process violation." *Johnson* at ¶ 26.

{¶ 35} We note that if a trial judge forms an opinion based on facts introduced or events occurring during the course of the current or prior proceedings, that does not rise to the level of judicial bias. *Johnson* at *id.* An exception to this rule occurs if the judge's opinions "display a deep-seated favoritism or antagonism that would make fair judgment impossible." *Id.* at ¶ 26, citing *State v. Hough*, 2013-

Ohio-1543 (8th Dist.), and *Liteky v. United States*, 510 U.S. 540 (1994). Nothing in the transcript evidences that the trial judge displayed "deep-seated favoritism or antagonism that would make fair judgment impossible."

{¶ 36} As to the trial judge's occasional questioning of witnesses, Evid.R. 614(B) provides that "[t]he court may interrogate witnesses, in an impartial manner, whether called by itself or by a party." Appellant has not shown plain error in the court's limited questioning of witnesses; the transcript shows that the questions were asked in aid of understanding certain facts.

{¶ 37} We cannot conclude that the trial judge displayed favoritism to the State. We find no fault with the way the trial judge conducted trial; the trial judge displayed evenhandedness throughout trial and sustained objections of both parties.

{¶ 38} Accordingly, the third assignment of error is overruled.

{¶ 39} In the fourth assignment of error, Appellant claims that the trial court erred by penalizing Appellant for going to trial, commonly known as the "trial tax." Appellant argues that he was offered three years' imprisonment as part of his plea deal with the State, so the trial court must have punished him when it imposed a 16 – 20 year prison sentence.

{¶ 40} We note that the parties stated at oral argument that the trial court never agreed to a three-year sentence. Therefore, although the State offered Appellant three years in prison as part of plea negotiations, there was no guarantee the court would have sentenced him to that amount of time had Appellant accepted the plea offer.

{¶ 41} It is well-established that a trial court has "full discretion to impose a prison sentence within the applicable sentencing range." *State v. Williamson*, 2024-Ohio-1599, ¶ 25 (10th Dist.), citing *State v. Foster*, 2006-Ohio-856. Appellant does not argue that his sentence was not within the applicable sentencing range or otherwise contrary to law.

{¶ 42} Despite his claims to the contrary, Appellant is unable to show that the trial court sentenced him to 16 – 20 years in prison solely because Appellant decided to go to trial.

{¶ 43} Therefore, the fourth assignment of error is overruled.

{¶ 44} In his final assignment of error, Appellant asserts his convictions should be reversed based upon the cumulative errors that occurred throughout the proceedings. Because, however, we find no error, there is no cumulative error. *State v. Jackson*, 2025-Ohio-109, ¶ 70 (8th Dist.); *State v. Yeager*, 2023-Ohio-2541, ¶ 70 (11th Dist.). Accordingly, the fifth assignment of error is overruled.

{¶ 45} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MICHAEL JOHN RYAN, JUDGE

EILEEN A. GALLAGHER, A.J., and
EMANUELLA D. GROVES, J., CONCUR